*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 11a0186p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

_____

MICHAEL EVANS,

           *Petitioner-Appellant*,

      *v.*

C. ZYCH,

           *Respondent-Appellee*.

No. 09-1094

Appeal from the United States District Court
for the Eastern District of Michigan at Bay City.
No. 08-10316—Thomas L. Ludington, District Judge.

Argued: April 21, 2011

Decided and Filed: July 12, 2011

Before: MARTIN, SUHRHEINRICH, and KETHLEDGE; Circuit Judges.

_____

**COUNSEL**

_____

**ARGUED:** Rajeev Muttreja, JONES DAY, New York, New York, for Appellant. Patricia Gaedeke, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee. **ON BRIEF:** Rajeev Muttreja, JONES DAY, New York, New York, for Appellant. Patricia Gaedeke, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee. Michael Evans, West Plains, Missouri, pro se.

_____

**OPINION**

_____

SUHRHEINRICH, Circuit Judge. Petitioner-Appellant, Michael Evans ("Evans"), challenges the classification of his convictions for violations of 26 U.S.C. § 5861(d) and 26 U.S.C. § 5861(e) as "crimes of violence" under 18 U.S.C. § 924(c)(3), for purposes of 18 U.S.C. § 4042(b), which requires the Bureau of Prisons ("BOP") to notify state, tribal, and local law enforcement officials prior to the release of a prisoner

1

convicted of a crime of violence. This is an issue of first impression in this circuit. We conclude that the crimes of possession and transfer under § 5861 are not crimes of violence with the meaning of § 924(c)(3). Accordingly, we **REVERSE** the district court's judgment and **ORDER** the removal of Evans's classification. We also **VACATE** the district court's decision regarding Evans's access to legal papers as that issue is now moot.

## I. BACKGROUND

Evans operated a pawn shop in southern Missouri. Although federally licensed to deal in firearms and ammunition, in late 2004 and early 2005, Evans traded and sold several firearms that were not properly registered under federal law.

Evans pleaded guilty to one count of unlawful receipt and possession of a firearm in violation of 26 U.S.C. § 5861(d), and two counts of unlawful transfer of a firearm in violation of 26 U.S.C. § 5861(e). On September 15, 2006, the Western District of Missouri sentenced Evans to 37 months of imprisonment and three years of supervised release.

In January 2008, Evans, then a prisoner at the Federal Correctional Institution ("FCI") in Milan, Michigan, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 in the Eastern District of Michigan. He alleged the BOP incorrectly classified his offenses as crimes of violence for purposes of BOP programming and the notification requirements of 18 U.S.C. § 4042(b). When an offense is a crime of violence, § 4042(b) requires the BOP to provide written notice to state, tribal, and local law enforcement at least five days prior to the release of a prisoner; or for a prisoner serving a term of supervised release, the probation officer must provide notice at least five days prior to a change in residence. Section 4042(b) defines crime of violence by reference to 18 U.S.C. § 924(c)(3). Evans also asserted that the BOP denied him access to legal documents necessary for the preparation of a 28 U.S.C. § 2255 petition.

In response, the government contended that Evans failed to exhaust his administrative remedies because the BOP denied his internal appeals as untimely. The

government also argued that a § 2241 petition was not the proper vehicle to challenge the § 4042 notification requirement, because it does not relate to the conditions or duration of confinement.

On October 7, 2008, the district court issued its opinion. First, the court dismissed the government's exhaustion challenge. It reasoned that the § 2241 exhaustion requirement is prudential, not jurisdictional. With respect to Evans's notification challenge, the court explained "that a § 5861 conviction qualifies as a crime of violence because of the correlation between the possession of certain unregistered firearms and violence and physical injury," and refused to grant Evans relief.[1] In support, the district court cited the Eleventh Circuit's decision in *United States v. Owens*, 447 F.3d 1345 (11th Cir. 2006), which held that possession in violation of § 5861 was a crime of violence as defined in § 4B1.2(a) of the U.S. Sentencing Guidelines so as to warrant a sentence enhancement pursuant to U.S. Sentencing Guidelines § 2K2.1(a)(4)(A) (providing a base offense level of 20). The court also cited to the Fifth Circuit's decision in *United States v. Jennings*, 195 F.3d 795 (5th Cir. 1999), which held that possession of an unregistered pipe bomb in violation of § 5861 was a crime of violence within the meaning of 18 U.S.C. § 924(c)(3) for purposes of a mandatory sentence enhancement pursuant to a conviction under § 924(c)(1) (requiring a sentence of not less than five years for using or carrying a firearm during a crime of violence).

The district court also denied Evans relief on his legal documents claim, concluding that he had already received or had an alternative form of access to the requested documents.

Evans filed a motion to alter or amend the judgment. After the district court denied the motion, Evans filed this appeal. Since filing his appeal, Evans has been released from the FCI, but remains under supervised release.

---

[1]The district court did not address the government's argument that a § 2241 petition may not include challenges to a notification requirement.

## II. ANALYSIS

### A. Standard of Review

This court reviews de novo the district court's dismissal of a habeas petition filed pursuant to 28 U.S.C. § 2241. *Fazzini v. Ne. Ohio Corr. Ctr.*, 473 F.3d 229, 231 (6th Cir. 2006).

### B. Mootness

#### 1. Notification Claim

After Evans's release from the FCI, the government filed a motion to dismiss his appeal. It argued the case was moot because Evans was no longer in custody and was no longer subject to the regulations he challenged. We denied the motion because Evans remains subject to the notification provision of 18 U.S.C. § 4042(b) throughout his term of supervised release.

The government now argues that Evans's appeal is moot because any further obligation to provide notice under § 4042 is imposed on Evans's probation officer and not on the BOP. This may be, but it does not negate the fact that Evans remains subject to the notification requirement; thus, this case is not moot. *See Rem v. U.S. Bureau of Prisons*, 320 F.3d 791, 793 (8th Cir. 2003) (per curiam) (finding that a prisoner's challenge to the § 4042(b) notification requirement was not moot because the prisoner "remains subject to the statute during the remainder of his supervised release" despite the government's argument that "because notification was issued when [he] was released to supervision" the challenge was moot).

Furthermore, the BOP is the entity that classified Evans's offenses as crimes of violence and it is the BOP that retains the power to re-classify Evans's offenses, should we conclude that his convictions do not meet the requirements of § 4042(b).

### 2. Withheld Legal Documents Claim

In his habeas petition, Evans asserted that the BOP prevented him from accessing certain legal documents necessary for the preparation of a 28 U.S.C. § 2255 petition. The parties agree that Evans's release moots this claim as he now has access to all available legal papers. Evans asks that we vacate the district court's decision with respect to his legal documents claim to ensure he is not prejudiced should he choose to take other legal action at some future date relative to the BOP's decision to deny him access to his legal papers while incarcerated. *See, e.g.*, *Christopher v. Harbury*, 536 U.S. 403, 414 (2002) (discussing claims for denial of access to courts that "do not look forward to a class of future litigation, but backward to a time when specific litigation ended poorly, or could not have commenced, or could have produced a remedy subsequently unobtainable" (footnote omitted)).

Because Evans's post-release access to his available legal papers moots his claim and prevents him from challenging this aspect of the district court's decision, we **VACATE** the decision on this issue so as to prevent the judgment from prejudicing Evans in future litigation. *See Ford v. Wilder*, 469 F.3d 500, 505 (6th Cir. 2006) (citing *U.S. Bancorp Mortgage Co. v. Bonner Mall P'ship*, 513 U.S. 18, 21-22 (1994)) (allowing vacatur when a civil case becomes moot during an appeal in order to eliminate a judgment the losing party was prevented from opposing on direct review).

### C. Merits

Evans asserts that the § 4042(b) notification requirement should not apply to his convictions under 26 U.S.C. § 5861(d) and § 5861(e) because neither crime requires the risk of force during the commission of the crime called for in § 924(c)(3).

Section 4042(b) defines crime of violence by explicit reference to § 924(c)(3), which provides:

> [T]he term "crime of violence" means an offense that is a felony and–
> (A) has an element the use, attempted use, or threatened use of physical
> force against the person or property of another, or

(B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

Although neither the Supreme Court nor this circuit has considered whether violations of § 5861 are crimes of violence within the definition of § 924(c)(3), several circuits have with varying results. *Compare United States v. Jennings*, 195 F.3d 795 (5th Cir. 1999) (holding possession in violation of § 5861 is a crime of violence under § 924(c)(3) for purposes of a § 924(c)(1) conviction), *and United States v. Amparo*, 68 F.3d 1222 (9th Cir. 1995) (recognizing a § 5861 conviction as a crime of violence under § 924(c)(3) for purposes of § 924(c)(1)), *with United States v. Serafin*, 562 F.3d 1105 (10th Cir. 2009) (holding that a conviction under § 5861(d) for possession of an unregistered weapon is not a crime of violence within the meaning of § 924(c)(3) and reversing defendant's conviction under § 924(c)(1) for possession of a firearm during a crime of violence).

In *United States v. Jennings*, the Fifth Circuit held that possession of a pipe bomb in violation of § 5861(d) was a crime of violence under § 924(c)(3) for purposes of a § 924(c)(1) conviction because "possession of an unregistered pipe bomb, by its very nature, creates a substantial risk of violence." 195 F.3d at 798. The *Jennings* court reasoned that to qualify as a crime of violence "an offense need not actually involve violence," but instead must merely "create a substantial risk of the possible use of force." *Id*. (citation omitted). Thus, "if a felony involves a strong possibility of violence . . . it is a crime of violence." *Id*. The *Jennings* court determined that the possession of a pipe bomb presented such a risk. *Id*. Indeed, the court observed that it could not "conceive of any non-violent . . . uses for a pipe bomb" and that possession of a pipe bomb is a crime because of the "virtual inevitability that such possession will result in violence." *Id*. at 798-99.

The *Jennings* opinion served as persuasive authority for the Eleventh Circuit in *United States v. Owens*, 447 F.3d 1345 (11th Cir. 2006), when it considered for purposes of a sentencing enhancement whether possession of an unregistered firearm in violation of § 5861 was a crime of violence under a similar definition of crime of violence found

in the U.S. Sentencing Guidelines.  Section 4B1.2(a) of the U.S. Sentencing Guidelines provides:

> The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that:
> (1) has an element the use, attempted use, or threatened use of physical force against the person of another, or
> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

The *Owens* court relied on *Jennings* for the proposition that possession of an unregistered firearm "should be outlawed because of 'the virtual inevitability that such possession will result in violence.'"  447 F.3d at 1347 (quoting *Jennings*, 195 F.3d at 799)).  It also observed that a number of courts had determined that "a section 5861 conviction qualifies as a crime of violence for sentence enhancement purposes."  *Id*. at 1346 (collecting cases).  The *Owens* court thus concluded that "possession of certain kinds of weapons categorically presents the potential risk of physical injury warranting sentence enhancement for being a crime of violence," *id*. at 1347, and affirmed the enhanced base offense level of 20 set by the sentencing court.

By contrast, in *United States v. Serafin*, the Tenth Circuit rejected the reasoning of the *Jennings* court and concluded that a conviction under § 5861 for possession of an unregistered weapon was not a crime of violence pursuant to § 924(c)(3) so as to warrant a § 924(c)(1) conviction.  562 F.3d at 1115-16.  In reaching this conclusion, the *Serafin* court relied on the Supreme Court's decision in *Leocal v. Ashcroft*, 543 U.S. 1 (2004).

At issue in *Leocal* was whether a conviction for driving under the influence was a crime of violence as defined by 18 U.S.C. § 16, and therefore an "aggravated felony" warranting deportation under the Immigration and Nationality Act.  *Id*. at 5-6.  Section 16 contains language virtually identical to § 924(c)(3):[2]

---

[2] We have previously recognized the essentially identical nature of § 924(c)(3) and § 16.  *See United States v. Sawyers*, 409 F.3d 732, 739 n.6 (6th Cir. 2005) (citing 18 U.S.C. § 924(c)) (discussing the definition of a "crime of violence" and stating that "[i]n some places, the definition from § 16 is used."

> The term "crime of violence" means--
> (a) an offense that has an element the use, attempted use, or threatened use of physical force against the person or property of another, or
> (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

The Court explained that to determine whether an offense is a crime of violence, it must "look to the elements and the nature of the offense of conviction, rather than to the particular facts relating to petitioner's crime." *Id*. at 7.

Starting its analysis with the statutory language, the Court emphasized that the "critical aspect" of subsection (a) was that a crime of violence involves the "use . . . of physical force against the person or property of another," which necessarily requires an active employment of force, suggestive of "a higher degree of intent than negligent or merely accidental conduct." *Id*. at 9.

The Court acknowledged that "[§] 16(b) sweeps more broadly than § 16(a)" in that it defines a crime of violence as including any felony offense that "'by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.'" *Id*. at 10 (quoting the statute). Parsing this language, the Court explained that § 16 covers offenses that "naturally involve a person acting in disregard of the risk that physical force might be used against another in committing an offense." *Id*. Critically, the Court emphasized, the risk identified in § 16(b) relates to the risk that force will be used in committing a crime, and not the risk that harm might arise from the offense conduct. *Id*. To underscore this point, the Court contrasted the broader language of the U.S. Sentencing Guidelines, which requires only a risk of injury to another. *Id*. at 10 n.7. Concluding its statutory analysis, the Court stressed that "§ 16's emphasis on the use of physical force against another person (or the risk of having to use such force in committing a crime), suggests a category of violent active crimes" that does not include DUI offenses. *Id*. at 11. The Court cautioned that including accidental or negligent conduct in § 16 would "blur the distinction" Congress sought to achieve by identifying some crimes as violent. *Id*.

Applying the *Leocal* framework, the *Serafin* court reasoned that § 5861 does not include conduct that "naturally involves a disregard of a substantial risk of force against another" or a risk that "force arises during the *course* of committing the offense - a *violent*, *active* offense," because possession may occur in an "array of non-violent circumstances," *Serafin*, 562 F.3d at 1114 (quotations and citations omitted).  Further, under a categorical approach, a § 5861 offense "does not necessarily implicate a disregard of a risk of force, nor does it anticipate that force may be used in the course of receiving or possessing the unregistered firearm." *Id.*

Other courts have analyzed the § 16 crime of violence language in a similar manner.  *See, e.g.*, *United States v. Hull*, 456 F.3d 133, 141 (3d Cir. 2006) (rejecting possession of a pipe bomb as a crime of violence under § 16 for purposes of an 18 U.S.C. § 842(p)(2)(A) violation); *United States v. Diaz-Diaz*, 327 F.3d 410, 414 (5th Cir. 2003) (holding that the possession of a short-barrel firearm in violation of state law is not a § 16 crime of violence).

We agree with the Tenth Circuit's conclusion that § 5861(d) is not a crime of violence under § 924(c)(3).  As *Leocal* directs, we adopt a categorical approach, looking to the language of the statute, rather than the particular facts of Evans's crimes.  Section 5861 provides that it is unlawful:

> (d) to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record; or
> (e) to transfer a firearm in violation of the provisions of this chapter[.]

Section 5861 by its terms requires that an individual possess or transfer a firearm; neither offense includes "the use . . . of physical force" as an element, so § 924(c)(3)(A) does not apply.  *Leocal*, 543 U.S. at 9.  Nor does either act inherently involve a risk of force.  Of course, possession or transfer of a firearm may ultimately result in the use of force against another.  But possession may also "occur in an array of non-violent circumstances, weakening the link between possession and [the risk of] violence," *Serafin*, 562 F.3d at 1114 (quoting *United States v. Bowers*, 432 F.3d 518, 521 (3d Cir. 2005)) (internal quotation marks omitted), and the same may be said of transfer.  In other

words, an individual may violate § 5861 by unlawfully possessing or transferring an unregistered firearm without necessarily involving any risk, let alone any substantial risk, that force will be used against another. Thus, under a categorical approach, these offenses do not fall within the definition of § 924(c)(3)(B). As a result, Evans's convictions are not crimes of violence under § 4042(b) and do not fall within the class of crimes requiring notification.

As the *Serafin* court observed, *Jennings* is not persuasive because it was decided before *Leocal* and failed to adequately consider the language in § 924(c)(3)(B) requiring the risk of force to occur "in the course of committing the offense." *See id*. at 1115. The *Owens* decision is similarly unpersuasive as it omitted any analysis of the "in the course of" language, and understandably so, as § 4B1.2(a) of the U.S. Sentencing Guidelines itself omits this clause. For these reasons, the district court's reasoning and reliance on *Jennings* and *Owens* is inconsistent with *Leocal*. That is, a simple correlation between the crime of conviction and the possibility of future violence is not sufficient; there must be a risk that force is used in the commission of the criminal act.

Finally, we note that this conclusion is consistent with other decisions of this court interpreting crime of violence in similar contexts. For example, in *United States v. Amos*, 501 F.3d 524 (6th Cir. 2007), the court considered whether the possession of a sawed-off shotgun in violation of 18 U.S.C. § 922(g) could serve as a violent felony under the Armed Career Criminal Act ("ACCA").[3] The majority opinion observed that the "used in the course of committing the offense" clause found in § 16(b), "does not appear in the ACCA, narrows the section 16(b) definition and distinguishes it from that in the ACCA." *Id*. at 527. Nonetheless, even under the broader ACCA definition, the court explained that, although possession creates a risk of harm in some instances, "the

---

[3]The ACCA uses language that mirrors the U.S. Sentencing Guidelines' crime of violence definition to define "violent felony" as a felony that:

> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

18 U.S.C. § 924(e)(2)(B).

same cannot be said for all instances of possession, such as where [the sawed-off shotgun] is stored unloaded in an attic or the trunk of a car." *Id*. at 528-29. The court therefore rejected categorizing possession as a violent felony under the ACCA.**[4]**

The concurring opinion in *Amos* cited the *Leocal* decision as additional support for the majority's conclusion that mere possession would not create the risk of physical injury to another required by the ACCA. *Id*. at 530 (Batchelder, J., concurring). The dissent disputed this analysis. *Id*. at 530-31 (McKeague, J., dissenting). It acknowledged *Leocal* dictates that possession is likely not a crime of violence under § 16, but that because "§ 16 differs from both the ACCA and the U.S.S.G. § 4B1.2. . . . a different analysis is clearly required under either the ACCA or the Guidelines." *Id*. at 533, 534.

Also instructive is *Orr v. Hawk*, 156 F.3d 651 (6th Cir. 1998), in which this court considered a challenge to the BOP's denial of early release on the grounds that petitioner's conviction under 18 U.S.C. § 922(g) as a felon-in-possession was a crime of violence. *Id*. at 652. The court concluded that the § 922(g) possession charge was not a crime of violence that could serve to deny early release. *Id*. at 656. In so holding, the *Orr* court observed that although "[s]everal sections of the Criminal Code define crimes of violence . . . none mentions mere possessory offenses as falling within its purview." *Id*. And more specifically, it noted that a § 922(g) possession offense does not satisfy the general definition of crime of violence found in 18 U.S.C. § 16. *Id*.

For these reasons we hold that convictions under 26 U.S.C. § 5861 (d) and (e) are not crimes of violence within the meaning of 18 U.S.C. § 924(c)(3) and do not require notification under 18 U.S.C. § 4042(b).

---

**[4]**Our decision in *United States v. Hawkins*, 554 F.3d 615 (6th Cir. 2009), which held that possession of a sawed off shotgun was a crime of violence under the U.S. Sentencing Guidelines, is not to the contrary. The *Hawkins* court recognized the Circuit's binding decision in *Amos* and the highly similar language used in the ACCA's violent felony and U.S. Sentencing Guidelines' crime of violence definitions. *Id*. at 617. Nonetheless, the court explained that a different result was required because the Application Note accompanying the U.S. Sentencing Guidelines specifically identifies possession of a sawed-off shotgun as constituting a crime of violence. *Id*.

### III. CONCLUSION

We **VACATE** the district court's judgment with respect to Evans's request to legal papers.  We **REVERSE** the judgment with respect to the classification of Evans's convictions as crimes of violence under 18 U.S.C. § 924(c)(3) and **ORDER** the BOP to modify Evans's classification accordingly.